**TEXAS EMPLOYERS' INS. ASS'N v. McKAY.**

**No. 5816.**

Court of Civil Appeals of Texas. Amarillo.

Oct. 13, 1947.

Rehearing Denied Nov. 17, 1947.

Underwood, Johnson, Wilson & Sutton, of Amarillo, for appellant.

Merchant & Jordon, of Amarillo, for appellee.

PITTS, Chief Justice.

This is a compensation suit filed by appellee, Thomas McKay, against appellant, Texas Employers' Insurance Association, insurer, for compensation as a result of an alleged injury sustained by appellee on or about July 20, 1945, while he was employed by Shamrock Oil and Gas Corporation, employer. The case was tried to a jury which found that appellee suffered the temporary loss of the use of both hands for a period of one hundred thirty weeks as a result of injuries sustained in the course of his employment. As a result of the jury findings the trial court rendered judgment in favor of appellee for the sum of $1000, payable on April 22, 1947, the date of judgment, together with an additional sum of $860 payable in forty-three consecutive weekly installments of $20 each beginning on April 11, 1947.

Appellant predicates its appeal upon six points of error, the first two of which are briefed together. It contends that the evidence fails to support appellee's claim of an accidental injury as distinguished from an occupational disease and that it was therefore entitled to a peremptory instruction.

The rule is well settled that an accidental injury must be established in such cases by pleading and proving a definite time when there occurred an usual or out of the ordinary exposure from which injury resulted. Appellee's pleadings are not questioned. He testified in effect that the nature of his work was looking after pumps at a gasoline plant; that on July 20, 1945, about ten o'clock in the morning while he was repairing a caustic pump for employer his hands became wet with drippings containing caustic coming from the pump; that soon thereafter his hands began to burn and sting and red spots came on them; that he washed them in water but the burning and stinging continued; that another laborer got a liquid that smelled like vinegar from the laboratory and he washed his hands in that; that he continued work that day, returned for work the next day and continued to work for employer until January 28, 1946, but his hands continued to burn the whole time and were sore; that a few days after his injury he saw Dr. Reid at the suggestion of the first-aid man, Mr. Lumas; that Dr. Reid examined his hands and gave him a prescription for an ointment or salve which he used without any cure being effected; that he had several doctors examine his hands and followed the treatment prescribed but his hands continued to burn and the skin cracked causing sores and blisters arose on the skin and his hands continued to give him trouble; that he quit work for Shamrock Oil and Gas Corporation on January 28, 1946; that he tried thereafter to barber a little, tried to farm on a small scale and raise chickens but his hands continued to give him trouble and he is still not able to work normally due to the condition of his hands; that medical attention was furnished him for eleven weeks after he quit work for his employer after which Mr. Miller of the Insurance Company, appellant, told him they had done all they could for him; that he likewise received compensation at the rate of $20 per week for eleven weeks after he quit work for his employer. The record reveals that appellee worked daily as a mechanic's helper in keeping pumps repaired; that some were oil pumps, some were gasoline pumps and some were caustic pumps. The record further reveals that all of the pumps dripped more or less all the time but there is no testimony to the effect that appellee got any caustic on his hands at any time other than July 20, 1945. The condition of appellee's hands as he described them was supported by the medical testimony in the record but the doctors who testified did not attempt to give definitely the cause of his trouble other than what he told them caused it. Another witness, Roy Lee Rogers, testified that he was working for the same employer when appellee received his injuries and he corroborates the testimony of appellee as to the date of the injury and the condition of his hands. The record reveals that appellee was a barber prior to 1943; that he injured

his hand by breaking the skin on it in 1936 while helping to repair a windmill; that he painted it with iodine and thereafter had trouble with an infection and a skin disorder on his hands that interfered with his work as a barber for some time. But the skin disorder was completely cured by 1939 or 1940 and did not bother him again. The record likewise reveals that appellee quit barbering for a time and was employed for two or three months by contractors Brown and Root in helping to construct the Cactus plant and again by contractor Shell for a period of several months as a welder's helper subsequent to the time he had been bothered with the skin disorder and prior to working for Shamrock Oil and Gas Corporation and that he stood a physical examination each time before working for the said contractors.

Appellant contends that any injury or any incapacity appellee may have sustained due to injury was confined to his hands and was caused solely by an occupational disease combined with appellee's own sensitivity, for which he is not entitled to compensation.

The jury found in response to special issues submitted to it that appellee sustained injuries to both of his hands while engaged in the course of his employment on July 20, 1945, as a result of which he suffered temporary loss of both hands for a period of one hundred thirty weeks. The jury further found in answer to appellant's special requested issue number one that a combination of occupational disease and appellee's own sensitivity did not stand as the sole cause of any incapacity appellee may have sustained.

■ The Commission of Appeals laid down the following rules in the case of Barron v. Texas Employers' Ins. Ass'n, 36 S.W.2d 464, 466:

"A distinguishing characteristic of an accidental injury is that it can always be traced to a definite time, place, and cause. Amalgamated Sugar Co. v. Industrial Commission, 56 Utah, 80, 189 P. 69.

"An occupational disease must be restricted to one that is the usual and ordinary result incident to the pursuit of an occupation and must in the nature of things be the result of a slow and gradual development."

These rules have since been consistently observed and that case has been often cited.

■ We think there is sufficient evidence to support the findings of the jury and that it fairly appears, when the foregoing rules are applied, that appellee's incapacity was due to an accidental injury. Appellant's points one and two are therefore overruled.

Appellant complains in point three that the trial court erred in the submission of special issue number 19 by assuming there was an accidental injury when there was evidence raising the question of occupational disease.

Special issue number 19, about which appellant complains, was submitted in the following language: "Do you find from a preponderance of the evidence, that any incapacity or loss of use of plaintiff's hands, if any, is due solely to a disease that is not traceable to the injury sustained by him on July 20, 1945?" The jury answered the issue favorable to appellee.

■ Appellant complains that the charge as given is on the weight of the evidence and assumes injury. Doubtless such complaint would not have been made if the trial court had submitted the issue in the language as stated except for adding the words "if any" between the words "injury" and "sustained." However the rule is well recognized that it is not error for the trial court to assume the existence of facts that have been conclusively established or that have not been controverted. Ames v. Herrington, Tex.Civ.App., 139 S.W.2d 183; Butts v. Weaver, Tex.Civ.App., 145 S.W.2d 251; Gillette Motor Transport, Inc. v. Fine, Tex.Civ.App., 131 S.W.2d 817; 41 Tex.Jur. 1137, Sec. 291, and other authorities there cited.

■■ Appellee testified clearly, directly and positively that he sustained an injury on July 20, 1945. The testimony of witness, Roy Lee Rogers, corroborated appellee's testimony as to the injury and the date thereof. There was no testimony controverting either the injury of appellee or the date, place, or the cause of the injury. There was evidence raising a slight pos-

sibility that appellee's incapacity might have been due to an occupational disease but we think the evidence conclusively established accidental injury and that the trial court did not err in so assuming. However the jury found in answer to other issues that appellee sustained the injuries as alleged and on the date alleged and that his incapacity was not caused by occupational disease combined with his own sensitivity, therefore, assuming that it was an error for the trial court to assume injury in submitting special issue number 19, it was a harmless error and not reversible. Appellant's point number three to the contrary is overruled.

Appellant presents and briefs points four and five together. It charges that the trial court erred in its submission of appellee's theory of accidental injury as well as appellant's theory of occupational disease. It confines its complaint to the definitions given by the trial court of "accidental injury" and "occupational disease" and the overruling of its objections thereto. The trial court submitted the following definitions of the terms respectively:

"By the term 'accidental injury,' as used in this charge, is meant and undesigned, unforeseen, or unexpected occurrence or mishap, causing damage or harm to the physical structure of the body and such diseases or infection as naturally result therefrom and which can be traced to a definite time, place and cause."

"You are instructed that 'an occupational disease' is defined as one which is acquired in the usual and ordinary course of an employment and which from common experience is recognized to be incidental thereto; it is the usual and ordinary result incident to the pursuit of an occupation and must, in the nature of things, be slow and gradual in development."

We find no fault with the definitions given. They seem to have been generally accepted in this State. Barron v. Texas Employers' Ins. Ass'n, supra; Texas Employers Ins. Ass'n v. Hitt, Tex.Civ.App., 125 S.W.2d 323; Casualty Underwriters v. Flores, Tex.Civ.App., 125 S.W.2d 371; Federal Underwriters Exchange v. Price, Tex.Civ.App., 145 S.W.2d 951; 45 Tex.

Jur. 471, 72, Sec. 80, and Page 506, Sec. 105, and other authorities there cited. Appellant's points four and five are overruled.

Appellant charges in point six that the trial court erred in submitting appellee's average weekly wage rate. The issue was submitted as authorized in Subdivision 3 of Sec. 1, Article 8309, Vernon's Ann.Civil Statutes, in the following language:

"What do you find, from a preponderance of the evidence, should be fixed as the average weekly wages of the Plaintiff, based upon what may seem to you to be just and fair to both the Plaintiff and the Defendant?"

In answer to the special issue the jury found $48.36 to be the average weekly wages of appellee.

Appellant complains that appellee did not discharge the burden of proof by excusing himself from the provisions of Subdivision 2 of Sec. 1 of Article 8309 by proving that there was not another employee of the same class as appellee, working substantially the whole of the immediately preceding year, in the same or in a similiar employment as appellee, in the same or a neighboring place to appellee, from which his average weekly wage rate could have been fixed and that he was not therefore entitled to any more than the statutory minimum of $7 per week.

It was incumbent upon appellee to show by competent evidence that his wages could not have been computed under Subdivisions one and two of Section 1, Article 8309, before he could resort to the provisions of Subdivision three to compute such wage rate. Service Mut. Ins. Co. of Texas v. White, Tex.Civ.App., 138 S.W.2d 273.

It has likewise been judicially determined that the term "substantially the whole of the year" as used in compensation cases means substantially 300 days of labor. Petroleum Casualty Co. v. Williams, Tex. Com.App., 15 S.W.2d 553, 555, and other authorities hereinafter cited.

Appellant made the following admission by stipulation:

"The Defendant will admit that in the twelve month period preceding July 20th, 1945, no employee doing the same class of

work as Mr. McKay, the Plaintiff, and working for the Shamrock Oil and Gas Corporation, had done as many as 300 days of work."

Appellee testified without contradiction that he had worked for employer only from April 25, 1945, to July 20, 1945, the date of the injury, that he did not know of any other person of the same class who was doing the same kind of work as he in the same or in a neighboring vicinity for three hundred days during the year immediately prior to July 20, 1945, and that in his opinion there was no such employee. C. C. Bogan, Chief Clerk for the Shamrock Oil and Gas Corporation, testified that he knew of no such employee and that in his opinion there was no such employee. A. B. Sewell, a mechanic for employer for a number of years, testified that he knew of no such employee and he believed if there had been such he would have heard of it. There was no testimony tending to show that there was an employee doing the same class or work as appellee in the same or neighboring vicinity for three hundred days immediately prior to July 20, 1945, and there was no effort made to disprove the testimony given by the witnesses as hereinabove stated.

The record reveals and the witnesses named above so testified that the employees, including appellee, worked on a basis of eight hours per day, six days each week at 93¢ per hour with "time and a half pay" for the sixth day each week. The record likewise reveals that appellee was furnished medical treatment and was paid compensation at the rate of $20 per week for eleven weeks after he quit work for his employer.

It is our opinion that appellee offered sufficient evidence under the law to excuse himself from relying on the provision of Subdivisions one and two of Section 1, Article 8309, and that neither of those Subdivisions was applicable in attempting to compute his wage rate. Then the trial court was authorized to submit the question of average weekly wage rate under the provisions of Subdivision three of said Article. We think the issue was properly submitted and that there was substantial evidence to support the finding of the jury in answer thereto. In support of our position in these matters we cite the following authorities: American Surety Co. of New York v. Underwood, Tex.Civ.App., 74 S.W.2d 551; Service Mut. Ins. Co. of Texas v. White, supra; Traders & General Ins. Co. v. Crouch, Tex.Civ.App., 113 S.W.2d 650 (the last case was reversed and remanded for other reasons due to argument of counsel); Casualty Reciprocal Exchange v. Stephens, Tex.Com.App., 45 S.W.2d 143; Associated Indemnity Corporation v. McGrew, 138 Tex. 583, 160 S.W.2d 912. We overrule appellant's sixth point of error.

After a careful examination of the record and the assignments of error, we find no reversible error. The judgment of the trial court is therefore affirmed.